## Charles W. Denning v. Midvale Steel Company, Appellant.

*Negligence—Contributory negligence—Evidence—Province of court and jury.*

In an action against a steel company by one of its employees to recover damages for personal injuries caused by a chip of steel from a defective machine striking the plaintiff in the face, the question of the plaintiff's contributory negligence is for the jury, where it appears that the plaintiff, who was an experienced machinist, had knowledge of the defect in the machine ; that this defect caused it to throw chips, not constantly, but only occasionally ; that plaintiff had known of only several instances in three months ; that it then gave warning by its irregular action that chips were likely to be thrown ; that plaintiff was struck at a point at which, to his knowledge, chips had not been thrown before, and that he had stopped at this point for only an instant.

Argued Jan. 16, 1899. Appeal, No. 300, Jan. T., 1898, by defendant, from judgment of C. P. No. 1, Phila. Co., March T., 1896, No. 112, on verdict for plaintiff. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before BEITLER, J.

At the trial it appeared that on June 6, 1895, plaintiff was engaged in work on a planer in defendant's steel works in cutting a piece of steel. He left his work, and went eight or ten feet away from the planer to a lunch box. After procuring his lunch he turned from the box and was instantly struck by a chip of steel from the planer. The condition of the machine is particularly described in the opinion of the Supreme Court.

Defendant's point was as follows:

Under all the evidence the verdict must be for the defendant. *Answer:* Refused.

Verdict and judgment for plaintiff for $2,000. Defendant appealed.

*Error assigned* was above instruction, quoting it.

*A. H. Wintersteen,* for appellant.—Plaintiff was guilty of contributory negligence : Hart v. H. C. Frick Coke Co., 131 Pa. 125 ; Augerstein v. Jones, 139 Pa. 183 ; Lehigh Valley R. R. Co. v. Greiner, 113 Pa. 600 ; Pittsburg & Connellsville R. R. Co. v. Sentmeyer, 92 Pa. 276 ; Reese v. Clark, 146 Pa. 465 ; Bemisch v. Roberts, 143 Pa. 1 ; P. & R. R. Co. v. Hughes, 119 Pa. 301 ; Nuss v. Rafsnyder, 178 Pa. 397 ; Brownfield v. Hughes, 128 Pa. 194 ; Hurley v. Lukens Iron & Steel Co., 186 Pa. 187 ; Lynch v. Erie City, 151 Pa. 380.

*Joseph W. Shannon,* for appellee, cited Frick v. Barbour, 64 Pa. 120 ; Hall v. Vanderpool, 156 Pa. 152 ; Bennett v. Standard Glass Co., 158 Pa. 120 ; Kingan v. Traction Co., 5 Pa. Superior Ct. 436.

OPINION BY MR. JUSTICE GREEN, July 19, 1899 :

The learned trial judge in an able charge committed this case to the jury in a most lucid, comprehensive and instructive man-

ner, so that they could not fail to understand the precise character of the questions with which they had to deal. He carefully explained the exact conditions in which the defendant might be held liable on the one hand, and in which the plaintiff could not recover on the other. It seems to us, after a most careful consideration of all the testimony, and of the entire charge, that it was strictly correct in every legal sense, that it fairly conserved every right for which the defendant could contend, and defined precisely the limitations within which the plaintiff might recover.

But a single assignment of error is made, to wit: that the court below did not charge that under all the evidence the verdict must be for the defendant. The appellant does not now dispute the correctness of the finding of negligence on its part, and the only proposition upon which a reversal is asked is that the plaintiff was guilty of contributory negligence, and that the court should have given a binding instruction to that effect. This proposition should be sustained if the evidence showing contributory negligence were undisputed or if the evidence to the contrary were only a scintilla. The scope of inquiry is therefore extremely narrow. The fundamental contention of the argument for the appellant is, that the plaintiff voluntarily assumed a position of manifest danger from flying chips at the moment before the occurrence of the accident. If there was no dispute as to the correctness of this contention the plaintiff could not recover, and the court should have so instructed the jury. It is argued for the defendant that the undisputed testimony shows that the direct line of motion of the flying chips was towards the place which the plaintiff occupied when his eye was struck; that the plaintiff knew this and therefore assumed the risk of the consequences. The plaintiff was an experienced machinist; he had been running this particular machine for some time, and he knew that it had a habit of throwing chips when out of proper repair; that it was out of repair at the time of the accident and that he knew of that condition of the machine and had given notice of the defect at the repair shop some two weeks before the accident. He also knew that the defect in question caused the machine to throw chips, and that he had continued to work on it notwithstanding such knowledge and that it had not been repaired when the accident

occurred. All of this appears in his own testimony and is therefore undisputed.

Now the contention of the appellant is that in these circumstances, when the plaintiff left the head of the machine where the tool was doing its work and went to the lunch box and took some lunch from it and then turned towards the machine, he placed himself in a position which he knew to be dangerous on account of the defect in the machine which caused the chips of steel to fly in the direction where he stood, and thereby contributed to the injury he sustained, and cannot recover. If this contention were absolutely true in the breadth of statement in which it is made the conclusion expressed would be justified, but there are qualifying circumstances which demand consideration, and there is an absence of facts which are necessary to give vitality to the argument. For instance, it was not proved that the machine was in the constant habit of throwing chips when it was at work. On the contrary, the testimony of the plaintiff was, and it was the only testimony on that subject, that he had seen it throw chips in several instances only, during the three months he had worked it. Then there was no proof that it had ever thrown chips so far as the position in which the plaintiff was at the moment of the accident. There was testimony that such machines would throw chips when the tool was working in very hard steel, but only for a very short distance, ordinarily four to six inches and not more than a foot. It would not then follow as a necessary consequence that the plaintiff knew, or even had reason to believe, that the machine was then throwing chips, or would throw them, and especially there was no proof that he had any reason to expect that any chips would or could strike him at so great a distance from the tool. While the result in this instance proved that such a consequence was possible, there was no proof that it had ever occurred before, and hence no necessary inference could be drawn that he was facing a known danger in occupying the position he did at the moment of the accident. This consideration indicates that the question of contributory negligence resulting from this cause would have to be determined by the jury as a question of fact, and not by the court as a question of law. But, beyond all this, the plaintiff did not, in fact, according to his own testimony,

occupy and remain in a position fronting the tool. The whole occurrence took place in an instant of time, as described by the plaintiff. This is his account of it: "About half past two I was planing down one side of the hammer die and I had been alongside the machine. It was working right along all right and I walked about eight or ten feet to the lunch box and I had opened that and taken out a piece of bread, and I turned around and faced the machine and as I did it hit me in the eye. Q. What hit you in the eye? A. A piece of metal, a chip. . . . Q. How far were you from the work at that time? A. About ten feet. Q. Was there anything in the machine which showed that it was going to throw a chip so you could have escaped it? A. No, sir." From the other testimony it appeared that the machine only threw chips when there was lost motion in the cross-head which held the tool, arising from a loose condition of the parts which composed the cross-head, the remedy for which was a tightening up of those parts. The plaintiff thus described the mechanism and working of the machine: "Q. Describe the feed mechanism of the machine at the time of the accident. A. The feed mechanism which you put your feed on, sometimes it would cut, then again it would not cut, and after awhile she would drop down three eighths of an inch and dig right into the work. Q. That is, the tool of the machine would drop down? A. Yes, sir. Q. What would be the result? A. It would go right down and dig right down into the work, and the consequence would be it would throw a chip. . . . . Q. Tell in your own way just what caused the chips to be thrown from the work on which the planer was engaged. A. As far as I know the reason, my reason would be, there being so much lost motion in there, that when the tool came down to take hold she would hook over this way, and the tool being up against the work had a tendency to drive it in, and the consequence would be when the pressure would be relieved she would throw chips. Q. There would be an uneven pressure then due to the lost motion? A. Yes, sir."

It will be seen from the foregoing that when the machine threw chips it would be the result of an irregular action of the machine, putting an unusual strain upon the tool. Now when the plaintiff testified that the machine was working all right when he left it to go to the lunch box, there was nothing to

put him on guard against flying chips or to indicate that there would be any. It would be a vastly different question if the throwing of chips was a constant and necessary result of the movement of the machine, for in that event the plaintiff would be bound to take notice of this fact and to take precautions against injury from such a source. But when it was only an occasional habit of the machine to do this, and the machine itself gave notice by its irregular action when it was about to, or might, throw chips, it would not be a conclusion of law that when he went to the lunch box he was bound to assume that it would throw chips, and that he must take precautions against it. Again it cannot be said that he took a position facing the tool and remained there because on the instant of his turning around towards the machine he was struck by the chip. The utmost that the court could do therefore was to leave it to the jury to say whether, in view of all the facts and circumstances of the case, the plaintiff was guilty of contributory negligence in doing what he did, and this is precisely what the court did.

There was also a conflict of testimony on the point whether a position at the foot of the machine when it was throwing chips was more, or less, dangerous than a position on either side of it, and hence it was necessary to refer that subject and the whole of the testimony to the jury to determine. There was considerable testimony in the case, and some other matters were brought out, but nothing that could affect the question as to whether the case was for the jury or the court. We think the action of the court in submitting the case to the jury was entirely correct, and therefore we must dismiss the assignment of error.

Judgment affirmed.